IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JAMES L. BLACKFORD, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-1601-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

James L. Blackford
731 S.W. Salmon Street, Apt. 1106
Portland, Oregon 97205

    Pro Se Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil Evans
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Page 1 - OPINION AND ORDER

Leisa A. Wolf
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 600
Portland, Oregon  97204-2902

    Attorneys for Defendant

KING, Judge:

Plaintiff James Blackford brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for SSI due to disability. The claimant has the burden of proof on the first four steps. <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for SSI due to disability. The claimant has the burden of proof on the first four steps. <u>Bustamante v. Massanari</u>, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity." If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(e) and 416.920(e).

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Bustamante, 262 F.3d at 954.  The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).  Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance.  Id.  "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."  Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

After a review of Blackford's medical records, the ALJ found that Blackford had severe impairments of chronic low back pain, status/post right femur fracture, and major depressive disorder.  The impairments did not meet or equal the listed impairments, either singly or in combination.  The ALJ discounted the opinions of several medical and nonmedical sources, as well as Blackford's credibility.  The ALJ concluded that Blackford retained the residual functional capacity to perform light exertion work with a few nonexertional limitations.  The ALJ also limited Blackford to routine, repetitive work with little public contact and that his work

would be best performed alone and not as part of a team. Based on the opinion of a vocational expert, the ALJ found that Blackford could work as an assembler, cannery worker, and hand packager and consequently, was not disabled as defined by the Act.

## FACTS

James Blackford, who was 50 years old at the time of the hearing, contends that he has been disabled since November 15, 1998, due to depression and chronic pain in his lower back, neck, arms, and knees. Blackford has one year of college and has worked as a private disc jockey, maintenance person, retail salesperson, telemarketer, rigger, tugboat mate, and taxi driver. He had an accident at work in 1993 and was in two motor vehicle accidents in 2002 and 2003.

Blackford is prescribed an antidepressant, which provides a good result, and narcotics for the pain, which help but do not completely block it. For a time, the state provided Blackford with a housekeeper for 20 hours a month to help with laundry, cleaning, cooking, and shopping. When he lost that service, an employee at the apartment building helped him.

Blackford complains of constant pain in his lower back that radiates down both legs and tingling and numbness in his legs and feet. Even with narcotic pain medication, Blackford first rated his typical pain as a six to seven on a scale of one to ten, with ten the worst pain possible. At times, the pain is off the top of the scale for a couple of hours or as long as a day. When the hearing was continued a year later, Blackford testified that his typical pain level on medication was eight to nine. He also began having headaches that were at a pain level of nine. Blackford's depression makes him withdrawn and angry.

# DISCUSSION

I.     <u>Blackford's Credibility</u>

Blackford contends that the ALJ did not properly evaluate and discredit his testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must (1) produce objective medical evidence of one or more impairments; and (2) show that the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. <u>Smolen v. Chater</u>, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The claimant is not required to produce objective medical evidence of the symptom itself, the severity of the symptom, or the causal relationship between the medically determinable impairment and the symptom. The claimant is also not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. <u>Id.</u> at 1282. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. If there is no affirmative evidence of malingering, the ALJ may reject the claimant's testimony only if the ALJ makes specific findings stating clear and convincing reasons for the rejection, including which testimony is not credible and what facts in the record lead to that conclusion. <u>Id.</u> at 1284.

Although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

In determining that Blackford is not entirely credible, the ALJ noted that his treating physician, Dr. Gideonse, was concerned about secondary gain. A chart note from Multnomah County Health Department states that Blackford's symptoms are so bizarre that there is a possibility of malingering or secondary gain. Additional reasons given include: (1) the treating physicians noted significant improvement on narcotics, for example Dr. Kullberg's letter of July 7, 2004, and the chart note from November 5, 2004, but Blackford still claimed severe pain at the hearing on December 1, 2004; (2) Blackford claimed loss of sensation in his hands but Dr. Ogisu found no limitation in his hands; (3) little objective testing supports the subjective physical and mental allegations; (4) Blackford carried his wheelchair up a flight of stairs to Dr. Ogisu's office when the elevator was out of order; and (5) Blackford's social worker stated that he was writing a book on homelessness and how to obtain benefits, causing her to contact a local radio station to see if he could make a demo tape to promote the book.

The ALJ's reasons are supported by the record and demonstrate the inconsistencies in Blackford's allegations. I conclude that the ALJ made the required specific findings stating clear and convincing reasons for determining that Blackford lacked credibility.

II.     Medical Opinions

Blackford contends that the ALJ failed to give clear and convincing reasons for not crediting the opinions of several physicians: Dr. Gideonse, Dr. Kullberg, and Dr. Givi.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.

Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830. The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. Id. at 831. Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by and are consistent with other evidence in the record. Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999).

A physician's opinion of disability "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." Id. at 602 (internal quotation omitted); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An ALJ is not required to accept the opinion of a physician, even a treating physician, if the opinion is "brief, conclusory, and inadequately supported by clinical findings." Batson v. Barnhart, 359 F.3d 1190, 1195 (9th Cir. 2003).

A.    Dr. Gideonse

Dr. Gideonse's chart note from April 8, 2003 states in part:

> Some things are going quite well for him. He feels his mood is improved. He is handling his homeless adversities well and feels the Celexa was a definite improvement after the initial improvement of the Prozac waned. He brings with him some specific questions wondering if he has a herniated nucleus pulposus with nerve root compromise including neuroanatomic distribution of pain specifically left foot laterally positive straight leg test, weakness atrophy of the left leg muscles which he does have, note is written to this effect.

Page 8 - OPINION AND ORDER

Tr. 168. Also on April 8, 2003, Dr. Gideonse wrote on a prescription pad: "PT does have herniated nucleus pulposus & degenerative disk disease @ L4-5 with nerve root compromise including neuro-anatomic distribution of pain, positive straight leg raise and weakness/atrophy of [left] calf muscles." Tr. 180.

The ALJ noted that this note did not reference any objective findings based on physical examination or the use of medically acceptable diagnostic techniques to support the diagnosis. Moreover, the ALJ realized that Blackford's question was drawn exactly from the language in Listing 1.04, Disorders of the Spine (e.g. herniated nucleus pulposus . . .). The ALJ stated that the recitation of language from one of the Listings is insufficient without substantiation. He also noted that there is nothing in the record showing a positive straight leg raising test in both sitting and supine positions, that Blackford was noted not to give adequate effort on all examinations, that the examinations generally noted normal range of motion of the lumbar spine, and that the degree of severity is not recorded to have lasted for 12 months.

I note the question is not one that a person without a medical education would know to ask unless they had been studying the Listings in an attempt to find a presumptively disabling condition similar to their symptoms.

The ALJ also did not accept Dr. Gideonse's opinion of October 28, 2002 that Blackford could only work 25 hours a week. Further, on January 27, 2003, Dr. Gideonse completed a Verification of Disability to assist Blackford's attempts to get publicly subsidized housing. On it, he stated that Blackford became disabled on June 3, 2002 and that his impairment substantially impeded his ability to live independently. The ALJ noted that this onset date contradicted Blackford's alleged onset date of November 1998. Concerning both opinions, the

Page 9 - OPINION AND ORDER

ALJ found that they repeated Blackford's subjective complaints, were not supported by findings based on objective examination or medically acceptable diagnostic techniques, were inconsistent with Dr. Ogisu's findings, and were inconsistent with some of Dr. Gideonse's own chart notes.

The ALJ's reasons are supported by the record. Blackford's credibility has been appropriately discounted. I find that the ALJ has given clear and convincing reasons for rejecting the opinions of Dr. Gideonse.

B.   Dr. Kullberg

Dr. Kullberg concluded that Blackford has chronic myofascial pain syndrome with pseudo-addiction that arose when his chronic pain was undertreated. When she convinced Blackford to take an appropriate amount of narcotics, she found that he has done much better and could then bathe, shop, cook, and clean with self-pacing.

The ALJ found that Dr. Kullberg's diagnosis of chronic myofascial pain syndrome was based almost solely on Blackford's subjective allegations, which were not adequately supported by the evidence. He also found that Dr. Kullberg overstated Blackford's use of physical therapy, pain classes, and psychiatric evaluation and treatment.

The record supports the ALJ's assessment. More importantly, Dr. Kullberg gave Blackford a diagnosis but did not state any limitations on his ability to work. Thus, there was nothing in her opinion that the ALJ did not adopt when determining Blackford's residual functional capacity.

C.   Dr. Givi

A clinical psychologist, Dr. Givi, examined Blackford in March 2004. He found Blackford to have average cognitive functioning with moderate deficits in concept formation,

short-term memory, social-practical judgment, and insight into his own emotional distress. Dr. Givi diagnosed Blackford with major depressive disorder, recurrent, moderate, with his symptoms under control with medication.

The ALJ included in his hypothetical the limitations that the work must be routine, repetitive work with little public contact, the work is best performed alone, and the work cannot be performed as part of a team. Dr. Givi did not put any additional limitations on Blackford. Thus, the ALJ did not reject any part of his opinion.

### D. Dr. Ogisu

On February 9, 2004, Blackford was examined by an orthopedist, Dr. Ogisu. Blackford was not fully cooperative with the exam due to his severe pain. The elevator in Dr. Ogisu's building was out of order so Blackford carried his nonprescription wheelchair up the flight of stairs, aggravating his pain. After a limited exam, Dr. Ogisu found that Blackford's subjective complaints do not have a firm basis in objective findings and that the exam findings were nonspecific and showed a significant functional component. The doctor also stated, "Due to functional aspects of his pain, it is difficult to state with any certainty the requirement for assistive devices for ambulation. An etiology for his extreme pain and lack of mobility has not been established." Tr. 354. Dr. Ogisu completed a Medical Source Statement of Ability To Do Work-Related Activities. On the form, he noted minimum capacities were assumed based on Blackford's subjective presentation, that the etiology of the severe pain has not been established and is not evident clinically or radiologically, and that the limitations are not supported by any solid clinical evidence.

Blackford contends that Dr. Ogisu opined that Blackford cannot do anything. This is not a reasonable interpretation of Dr. Ogisu's opinion. The doctor stated that he had to assume the minimum functionality based on Blackford's subjective presentation, which Dr. Ogisu found did not have a firm basis in objective findings. Moreover, the ALJ has properly found that Blackford lacked credibility. Thus, the ALJ did not err in his treatment of Dr. Ogisu's opinion.

III.     Nonmedical Opinions

Blackford contends that the ALJ did not properly evaluate and discredit several opinions from nonmedical sources: Scott Stipe, state vocational counselor; Nancy Conover, state vocational counselor; and Kelly Goodman, a licensed clinical social worker.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. A medical diagnosis, however, is beyond the competence of lay witnesses. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996). A legitimate reason to discount lay testimony is that it conflicts with medical evidence. Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Conover, a vocational rehabilitation counselor for the State of Oregon, wrote Blackford on March 6, 2003 to tell him that she was closing his file because his medical condition precluded him from employment at that time, and that Blackford should contact her to reopen the file when his condition improves and he is ready to look for work.

The ALJ noted that this opinion requires consideration of both vocational and medical factors and Conover is not an acceptable medical source. The ALJ further noted that objective medical findings and the use of medically acceptable diagnostic techniques disagree with Conover's opinion. The ALJ did not err in rejecting her opinion.

Goodman, a social worker at the Westside Health Clinic, wrote a letter to the Appeal Hearing Board, presumably when Blackford was appealing the denial of general assistance. She explained that Blackford's reason to request a switch to a different narcotic pain medication was based on a legitimate concern shared by most patients at the county-funded clinic, that he did not want to appear to be drug seeking, in addition to his concern about developing tolerance for the drug. Goodman said nothing about Blackford's ability to work, functional capacity, or limitations. Goodman's chart notes mostly address Blackford's complaints about social service agencies not providing services to which he felt entitled. She also testified at the hearing that he appeared to be in pain ever since she began working with him and also suffered from lots of depression, anxiety, hostility, trouble sleeping, and anger.

Goodman's letter and chart notes state no limitations concerning Blackford's ability to work. Her testimony concerning Blackford's pain and depression was based on Blackford's complaints and her observation of him. Since Blackford's credibility has been properly discounted, Goodman's testimony is entitled to little weight, even though it likely describes his presentation accurately.

Stipe testified as the vocational expert at the hearing. In response to the ALJ's hypothetical question with the additional limitation that the person would be absent at unpredictable times for four or more hours on a weekly basis, Stipe testified that the person would not be retained in any of the positions previously listed.

The vocational expert's opinion about a claimant's residual functional capacity has no value if the assumptions in the hypothetical are not supported by medical evidence in the record. Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989).

Page 13 - OPINION AND ORDER

> The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel. Rather, the ALJ is free to accept or reject these restrictions . . . as long as they are supported by substantial evidence. This is true even where there is conflicting medical evidence. The limitation of evidence in a hypothetical question is objectionable only if the assumed facts could not be supported by the record.

Id. at 756-57 (citations and quotations omitted).

Although the ALJ posed this additional limitation, he later rightly determined that it is not supported by the record after discrediting Blackford's testimony. Thus, the ALJ did not commit an error when he ignored this part of Stipe's testimony.

IV.     Other Administrative Proceedings

Blackford contends that the ALJ ignored rulings by state ALJ Johnson and SSI Judge Kenderer.

Blackford states that in 1996 he had a hearing with SSI Judge Kenderer who ruled that he could no longer do his past work as a rigger and could be retrained in sedentary work. There is nothing in the record about this. Judge Kenderer's decision, moreover, was issued two years prior to the date that Blackford now contends he became disabled. Thus, it is not material.

The ALJ did discuss ALJ Johnson's ruling of July 3, 2003 that Blackford was entitled to general assistance because he met Listing 1.04 for disorders of the spine. Judge Johnson made the decision based on Dr. Gideonse's April 8, 2003 note that Blackford had nerve root compression, which the ALJ expressly refused to believe for legally correct reasons, as explained above. The ALJ is not bound by state disability determinations. Wilson v. Heckler, 761 F.2d 1383, 1385 (9th Cir. 1985). Thus he committed no error.

V.    New Evidence

Blackford attached some documents to his brief which are not part of the administrative record.  He contends that his attorney at the time (Blackford is now appearing pro se) did not submit these documents which would have helped the ALJ decide that he was disabled.  The documents are:  (1) a Sallie Mae Servicing [federal education] Loan Discharge Application based on Total and Permanent disability, signed by Dr. Gideonse on August 19, 2003; (2) a Verification of Disability or Handicap for publicly subsidized housing, signed by Dr. Kullberg on June 14, 2004; (3) a Certification of Handicap/Disability for federally assisted housing, signed by Dr. Kullberg on October 14, 2004; and (4) a Reasonable Accommodation Verification for Public Housing signed by Dr. Gideonse on January 27, 2003.

Under 42 U.S.C. § 405(g), this court may remand a proceeding "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  If the evidence did not exist prior to the Secretary's final decision, good cause exists for the plaintiff's failure to present the evidence. Burton v. Heckler, 724 F.2d 1415, 1418 (9th Cir. 1984).

These documents all existed prior to the ALJ's decision, dated January 24, 2005. Blackford states that his attorney did not present the documents but does not state if he gave them to his attorney.  More importantly, however, the documents are all of the check-the-box nature and contain nothing in the way of objective findings or even opinions which are relevant to the precise issues here.  It is permissible to reject check-off reports from physicians that do not contain any explanation of the bases for the conclusions.  Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996).  Further, as discussed above, the ALJ properly discredited the opinions of both

Dr. Gideonse and Dr. Kullberg, who signed the documents. Thus, the four documents are not material and there is no need to remand the action so that they may be addressed.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards, and therefore the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

Dated this ___17th___ day of July, 2006.

                                                ___/s/ Garr M. King___
                                                Garr M. King
                                                United States District Judge